# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICROSPHERIX LLC,<br><br>　*Plaintiff,*<br><br>　　　　v.<br><br>MERCK SHARP & DOHME CORP., MERCK SHARP & DOHME B.V., AND ORGANON USA, INC.<br><br>　*Defendants.* | *Civil Action No. 2:17-CV-03984-CCC-JBC*<br><br>**JURY TRIAL DEMANDED** |

### AMENDED BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

## TABLE OF CONTENTS
|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL STANDARD | 5 |
| IV. | ARGUMENT | 8 |
|  | A. Plaintiff Has Not Pled Facts to Show How Nexplanon Allegedly Satisfies the "Brachytherapy" and "Target Tissue" Claim Limitations | 8 |
|  | B. Plaintiff Has Failed to Plead a Plausible Claim for Direct Infringement Because the Complaint Lacks Facts To Support Plaintiff's Joint Infringement Theory. | 11 |
| V. | CONCLUSION | 13 |

i

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) .................................................................................7, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................5, 6

*Atlas IP, LLC v. Exelon Corp.*,
  189 F. Supp. 3d 768 (N.D. Ill. 2016) ...............................................................6, 7, 10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................5, 6

*Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*,
  No. CIV.A. 14-6650, 2015 WL 3755223 (E.D. Pa. June 15, 2015) .................................8, 12

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
  No. 16-cv-801, 2016 WL 6089693 (D. Nev. Oct 18, 2016) ..............................................6

*Comcast Cable Comm'ns, LLC v. OpenTV, Inc.*,
  319 F.R.D. 269 (N.D. Cal. 2017) .......................................................................................7

*e.Digital Corp. v. iBaby Labs, Inc.*,
  No. 15-cv-05790, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016) ....................................13

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) .........................................................................................6

*Hargis v. Aramark Corr. Serv., LLC*,
  No. CIV. 10-1006 JBS/JS, 2013 WL 3465189 (D.N.J. July 10, 2013) ............................3

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) ........................................................................................11

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  134 S. Ct. 2111 (2014) .....................................................................................................12

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016) .........................................................................................8

*Macronix Int'l Co. v. Spansion Inc.*,
  4 F. Supp. 3d 797 (E.D. Va. 2014) ................................................................................7, 9

*Medtronic, Inc. v. AGA Med. Corp.*,
  No. C-07-0567MMC, 2009 WL 1163934 (N.D. Cal. Apr. 28, 2009) ...........................7, 12

ii

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) .................................................................................7, 12

*Novitaz, Inc. v. inMarket Media, LLC*,
    No. 16-cv-6795, 2017 WL 2311407 (N.D. Cal. May 26, 2017) ........................................6, 7, 9

*Raindance Technologies, Inc. v. 10x Genomics, Inc.*,
    No. 15-cv-152, 2016 WL 927143 (D. Del. Mar. 4, 2016) ...............................................9, 10

*Robern, Inc. v. Glasscrafters, Inc.*,
    206 F. Supp. 3d 1005 (D.N.J. 2016) ...............................................................................6

*Tai v. Minka Lighting, Inc.*,
    No. CV-16-02810-PHX-DLR, 2017 WL 568519 (D. Az. Feb. 13, 2017) ...........................13

### Other Authorities

Stedman's Medical Dictionary (2000) ...............................................................................3

Defendants Merck Sharp & Dohme Corp., Merck Sharp & Dohme B.V., and Organon USA, Inc. ("Merck") hereby move to dismiss Count II, alleged "Infringement of the '193 patent," of the Amended Complaint ("Complaint") filed by Plaintiff Microspherix LLC ("Plaintiff") for failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  INTRODUCTION

The Complaint in this action does not plead facts to show how Merck's accused Nexplanon product could plausibly satisfy the "brachytherapy" and "target tissue" limitations in the '193 patent claims, as required to viably state the claim of Count II.  Per Plaintiff's patent, "brachytherapy" is "[r]adioactive seed therapy," which is an "established technique for treating various medical conditions, most notably prostate cancer" by implanting brachytherapy seeds into diseased tissue to concentrate the treatment at that location "and not on distantly located healthy tissue."  '193 Patent (D.I. 27, Ex. D) at col. 1, l. 21–31.  The accused product in this case is Nexplanon, a non-radioactive birth control implant placed in the arm.  In contrast to the claims of the '193 patent, Nexplanon's birth control drug does not target tissue in the arm where the device is placed.  Rather, the drug in Nexplanon elutes into the bloodstream to produce a contraceptive effect by targeting distant tissues in the uterus and ovaries.  The '193 patent claims are expressly limited to methods of "brachytherapy." Specifically, the '193 patent claims are directed to a method for "administering a therapeutically active component *to a target tissue*" by implanting a "*brachytherapy* seed . . . into *a target tissue*" through the bore of a "*brachytherapy* needle" in a "*brachytherapy* implantation instrument"—none of which is applicable to Nexplanon.

Plaintiff does not allege facts pertinent to these limitations in its (failed) attempt to plead infringement.  Instead, the Complaint just parrots back the claim language, concluding it is met,

1

without any facts alleged to show how the use of Nexplanon could plausibly constitute "brachytherapy." Such legal conclusions do not state a plausible claim for patent infringement.

Count II also fails for a second, independent reason—Plaintiff's claim for direct infringement is not plausible because there is not a single actor that performs all of the claimed method steps. Rather, according to the Complaint, some steps are performed by Merck, while others are performed by healthcare providers. The alleged facts, even if true, are not enough to establish that these healthcare providers act under Merck's "direction and control"—the established standard for pleading direct infringement under these circumstances. Thus, the Complaint fails to present a plausible infringement claim for multiple reasons any one of which necessitates dismissal of Count II.

## II.  FACTUAL BACKGROUND

Plaintiff's Count II alleges that Merck directly and indirectly infringes U.S. Patent No. 6,514,193 ("the '193 patent"). Claim 1 of the '193 patent is identified as representative. *See* Complaint (D.I. 27) ¶ 122. Claim 1, like all the other '193 patent claims, is a method claim for administering a therapeutically active component in a brachytherapy seed to a target tissue by using a brachytherapy needle to deliver that seed into the target tissue:

> 1. A method for ***administering a therapeutically active component to a target tissue*** in a subject, the method comprising the steps of:
>
> providing a ***brachytherapy*** seed comprising a non-metal biocompatible component, a therapeutically active component comprising a non-radioactive drug, and a radiopaque marker, said biocompatible component being (a) physically associated with a therapeutically active component and (b) in contact with said radiopaque marker, wherein said ***brachytherapy*** seed has a size and shape suitable for passing through the bore of a needle having an interior diameter of less than about 2.7 millimeters (10 gauge);
>
> providing a ***brachytherapy*** implantation instrument comprising at least one brachytherapy implantation needle having a bore having an interior diameter of less than about 2.7 millimeters (10 gauge), and being adapted to accept the ***brachytherapy*** seed into the bore of the at least one ***brachytherapy*** implantation needle and deliver the accepted implantation device into a target tissue;

2

>   introducing the ***brachytherapy*** seed into the bore of the at least one implantation needle of the ***brachytherapy*** implantation instrument;
>
>   introducing at least a portion of the at least one ***brachytherapy*** implantation needle ***into a target tissue*** in the subject; and
>
>   actuating the ***brachytherapy*** implantation instrument such that the ***brachytherapy*** seed is delivered through the bore of the ***brachytherapy*** implantation needle ***into the target tissue***.

'193 patent (D.I. 27, Ex. D) at col. 16, l. 36–67 (emphases added). Thus, to practice claim 1, one must both: (a) "provid[e]" the specified "brachytherapy seed" and "brachytherapy implantation instrument;" and (b) use that instrument to administer the "therapeutically active component to a target tissue" by "introducing" a needle into that tissue to "deliver[]" the seed "into the target tissue."

According to the specification, "brachytherapy" is "[r]adioactive seed therapy" which "is an established technique for treating various medical conditions, most notably prostate cancer." *Id.* at col. 1, l. 22–24. This is consistent with the definition in contemporaneous medical dictionaries, which define "brachytherapy" as "[r]adiotherapy in which the source of irradiation is placed . . . within a body cavity." Stedman's Medical Dictionary (Ex. 1 to Declaration of Michael A. Valek in Support of Defendants' Motion to Dismiss[1]) at 232. The '193 patent explains that the brachytherapy seed's therapeutic effect is "localized near the diseased tissue" and "thereby concentrate[s] on the cancerous cells and not on distantly located healthy tissue." '193 patent (D.I. 27, Ex. D) at col. 1, l. 24–31. The specification further refers to a brachytherapy implantation device with a "specialized needle" for delivering the seeds into the diseased tissue. *Id.* at col. 1, l. 34–49. A purported advantage of this invention "compared to

---

[1] The Court may take judicial notice of this definition at the motion to dismiss stage because a dictionary definition is a fact of the kind contemplated by FRE 201. *See Hargis v. Aramark Corr. Serv., LLC*, No. CIV. 10-1006 JBS/JS, 2013 WL 3465189, at *2 (D.N.J. July 10, 2013) (taking judicial notice of medical dictionary definition).

3

conventional *systemic* administration (*e.g.*, oral or intravenous delivery) of therapeutically active substances" is that it "can provide higher and more consistent concentrations of a therapeutically active substance to a target tissue." *Id.* at col. 3, l. 14–21 (emphasis added).

The accused Nexplanon product is *not* used to deliver a therapeutic drug to the arm tissue where it is implanted and thus works very differently than the seeds used in brachytherapy to deliver radiation and medication to the local tissue where those seeds are placed. Nexplanon is a rod-shaped device that contains a drug called etonogestrel. Complaint (D.I. 27) ¶ 57; Nexplanon Prescribing Information (D.I. 27, Ex. G) at 1. That device is implanted under the skin in a patient's arm and the "etonogestrel is released into . . . circulation" to achieve a specific blood serum concentration of the drug. Nexplanon Prescribing Information (D.I. 27, Ex. G) at 19–20. This systemic administration of etonogestrel achieves a contraceptive effect in tissues far away from the patient's arm. *Id.* Specifically, "[t]he contraceptive effect of NEXPLANON is achieved by suppression of ovulation, increased viscosity of the cervical mucus, and alterations in the endometrium." *Id.* at 19. Moreover, unlike traditional brachytherapy, Nexplanon has no radioactive component. Complaint (D.I. 27) ¶¶ 144–46.

The Complaint offers few allegations to try to bridge the gaps between Nexplanon and the '193 patent claims. The only affirmative allegation referring to Nexplanon as "brachytherapy" is a half-hearted assertion that "Nexplanon may be considered, among other things, a seed including a brachytherapy seed." *Id.* at ¶ 133. For the "brachytherapy implantation device" and "brachytherapy implantation needle" limitations, the Complaint alleges only that Nexplanon is supplied with an implantation device and needle—ignoring the additional "brachytherapy" requirement. *See id.* ¶¶ 156–169. Regarding the "target tissue" limitations, the Complaint alleges that etonogestrel is the alleged "therapeutically active component," citing the

4

same page from the Nexplanon Prescribing Information quoted above that indicates that etonogestrel targets tissue in the ovaries and uterus. *Id.* at ¶ 124 (citing D.I. 27, Ex. G at 19). The Complaint also identifies the arm as the tissue where the Nexplanon device is implanted. *Id.* at ¶ 1326. There is no allegation that the "target tissue" for the implant and the "target tissue" for the drug are the same.

The Complaint alleges that various steps of the claimed method are performed by different actors. Plaintiff alleges that Merck is "providing" the alleged seed, *see id.* ¶¶ 128–129, and "supplying" the alleged implantation instrument and implantation needle. *See, e.g., id.* ¶¶ 1657, 166, 171. Plaintiff then alleges that someone else, "a healthcare provider," performs the steps of "introducing . . . the needle . . . into a target tissue in the subject" and "actuating" the implantation instrument to "deliver[]" the seed "into the target tissue." *Id.* ¶¶ 175, 179, 184–185. The Complaint alleges that *both* Merck and those "health care providers" directly infringe. *Id.* ¶ 188. There is no allegation that the health care providers are acting under Merck's direction and control. All that is alleged is that Merck provides instructions regarding the use of Nexplanon. *See id.* ¶¶ 182–189.

### III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege non-conclusory facts that make liability "plausible," meaning that they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). Thus, a complaint must set forth more than "[t]hreadbare recitals of the elements of a cause of action." *Id.*

Prior to its abrogation, Form 18 of the Federal Rules of Civil Procedure provided a generic form setting forth minimal requirements for pleading patent infringement. But the

5

December 2015 amendments to the Federal Rules of Civil Procedure did away with the generic pleading Form 18. Since that time, federal courts have consistently applied the plausibility standard established by the Supreme Court in *Iqbal* and *Twombly* to patent complaints. *E.g.*, *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1008 (D.N.J. 2016); *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-6795, 2017 WL 2311407, at *4 (N.D. Cal. May 26, 2017); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016) (following the abrogation of Form 18, "there is no longer an immovable object blocking the path of the *Twombly-Iqbal* canon's unstoppable force" in patent cases). Under that standard, the complaint must provide "fair notice" to the defendant of the claims. *See Iqbal*, 556 at U.S. 678; *Twombly*, 550 U.S. at 555. Although a court evaluating a motion to dismiss must accept the allegations in the complaint as true, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In evaluating the sufficiency of a complaint, such "conclusory" allegations are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681; *see also Twombly*, 550 U.S. at 557.

It is a canon of patent law that a patent is infringed only if a device or process meets every limitation of at least one claim of the patent—*i.e.*, only if the accused instrumentality performs all the steps or contains all the features recited in the claim. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014) ("To prove literal infringement, the patentee must show that the accused device contains *each and every* limitation of the asserted claims." (emphasis in original)). As a result, a plausible allegation of patent infringement must be based on a plausible allegation that *every* element of the patent claim is satisfied by the accused instrumentality. *See CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 16-cv-801, 2016 WL 6089693, at *3 (D. Nev. Oct 18, 2016); *see also Atlas IP*, 189 F. Supp. 3d at 775 ("[F]actual

6

allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement.").

This means a complaint must set forth factual allegations showing *how* the accused product embodies each limitation of at least one patent claim. *Novitaz*, 2017 WL 2311407, at *4; *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 804 (E.D. Va. 2014). A complaint cannot simply "parrot claim language," and say that it is met because that is merely a legal conclusion. *Novitaz*, 2017 WL 2311407, at *4. Rather, the "complaint must go beyond stating in conclusory terms that each accused product or service meets the elements of" a claim. *Comcast Cable Comm'ns, LLC v. OpenTV, Inc.*, 319 F.R.D. 269, 273 (N.D. Cal. 2017). Furthermore, even where a complaint makes factual allegations, they must be internally consistent and scientifically plausible. *See Atlas* IP, 189 F. Supp. 3d at 776 (dismissing complaint where allegations contradicted each other).

In addition, to state a claim for direct infringement of a method claim like those in the '193 patent, Plaintiff must show that "all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Where multiple actors perform the various steps— meaning the claim is allegedly infringed under a theory of "joint infringement"—one entity will be held responsible for the others' performance of method steps only "(1) where that that entity directs or controls others' performance, [or] (2) where the actors form a joint enterprise. *Id.* Simply providing instructions is not enough to sustain an allegation of direction and control. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1330 (Fed. Cir. 2008) ("That [Defendant] controls access to its system and instructs bidders on its use is not sufficient to incur liability for direct infringement."); *see also, e.g., Medtronic, Inc. v. AGA Med. Corp.*, No. C-07-0567MMC, 2009

WL 1163934, at *1 (N.D. Cal. Apr. 28, 2009); *Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*, No. CIV.A. 14-6650, 2015 WL 3755223, at *4 (E.D. Pa. June 15, 2015) (all holding that simply providing instructions that would allegedly cause an infringement, if followed, does not show direction or control). The Complaint must be dismissed unless the Plaintiff has set forth specific factual allegations to show that the Defendant does not just instruct, but actually directs or controls, the actions of the other actors contributing to the alleged joint infringement. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (dismissing complaint for failure to pled sufficient facts to show direction and control).

## IV.  ARGUMENT

### A.  **Plaintiff Has Not Pled Facts to Show How Nexplanon Allegedly Satisfies the "Brachytherapy" and "Target Tissue" Claim Limitations.**

Count II fails because the Complaint does not allege sufficient facts to show how Nexplanon could plausibly satisfy either (1) the "brachytherapy" limitations, or (2) the "target tissue" limitations of the '193 patent claims.

First, the alleged facts and exhibits cited in the Complaint as supporting them, affirmatively demonstrate that Nexplanon does not meet these limitations. Specifically, the Complaint acknowledges that:

1) Nexplanon is birth control, not radiotherapy (D.I. 27 ¶ 57);

2) Nexplanon slowly elutes etonogestrel to achieve systemic, not local, administration of the drug (Nexplanon Prescribing Information (*See* D.I. 27 ¶ 124 (citing Ex. G 1, 19)));

3) The "target tissue" for the alleged "therapeutically active component" are tissues in the ovaries and uterus (*See* D.I. 27 ¶ 124 (citing Ex. G at 1, 19));

    4) But Nexplanon is implanted in the patient's arm (D.I. 27, ¶ 176), which is a different target tissue than, and a remote tissue from, that to which the "therapeutically active component" is alleged administered; and

    5) Nexplanon is administered via a specialized device used *only* for Nexplanon, *see* D.I. 27 ¶¶ 156–57, 171–72 (citing Ex. G at 1), and thus that device cannot be a "brachytherapy implantation instrument" with a "brachytherapy implantation needle."

As a result, based on Plaintiff's own allegations and exhibits, there is no plausible claim for infringement of the '193 patent.

    Following the abrogation of Form 18, courts have repeatedly held that threadbare assertions, like Plaintiff's statement that Nexplanon "may be considered" a "brachytherapy seed" (D.I. 27 ¶ 133, *see also, e.g., id.* ¶¶156–69 ("brachytherapy"), and 126–27, 166, 169, 178, and 181 ("target tissue"), are merely legal conclusions that fall short of the requirement to show how the accused products satisfy those limitations.  *See*, *e.g.*, *Novitaz*, 2017 WL 2311407, at *4 (even where the complaint set forth certain factual allegations as to one accused product, granting dismissal because "a number of critical claim elements [were] not addressed by [the plaintiff's] factual allegations," which instead "merely parrot[ed] claim language"); *Raindance Technologies, Inc. v. 10x Genomics, Inc.*, No. 15-cv-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (dismissing the plaintiff's infringement claims for one patent because the court found that "[t]here is nothing in the complaint (at least so far as I can see) that hints at the role of [a particular claim limitation] in Defendant's products"); *Marconix*, 4 F. Supp. 3d at 804 (dismissing the plaintiff's allegations because they did "not allege *how* the offending products [infringe] the claims recited in the [complaint]. . . . Further, as to its other allegations, the [complaint] simply allege[d] that each element of a cited claim is infringed and then *parroted the*

9

*claim language* for each element." (emphasis added)); *see also Atlas IP*, 2016 WL 3907029, at *3 (merely alleging that the accused product "has" the claimed feature is insufficient).

To the extent the Complaint relies on unrelated facts to draw the conclusion these limitations are met, those conclusions are non sequiturs that do not make out a plausible claim. For example, the Complaint alleges that the physical dimensions of Nexplanon are within some of the ranges for the dimensions of the "seeds" described in the patent specification. Complaint (D.I. 27) ¶¶ 130–32. "Accordingly," concludes Plaintiff in the Complaint, "Nexplanon may be considered, among other things, a seed including a brachytherapy seed." *Id.* ¶ 133. But even if Nexplanon could be considered a "seed" because, according to Plaintiff's allegations, it has similar physical dimensions, it does not follow that Nexplanon is a seed for "brachytherapy." The Complaint makes no attempt to fill that gap. *See Raindance*, 2016 WL 927143, at *2 (dismissing complaint where the plaintiff made "no attempt to relate any [of its] factual assertions with any of the asserted claims").

There are similar flaws for the "target tissue" limitations. Claim 1 is drawn to a method for "administering a therapeutically active compound to a target tissue" by "deliver[ing]" the brachytherapy seed "into the target tissue." But the drug in Nexplanon produces a contraceptive effect by targeting tissues far away from the arm where the device is implanted. In effect, to try to satisfy the claim's requirement that both the seed and the drug be administered to the same "target tissue, "Plaintiff alleges two very different "target tissues," *i.e.*, arm tissue for the alleged "brachytherapy seed" and tissue in the ovaries and uterus for the alleged "therapeutically active compound," *Cf.* Complaint (D.I. 27) ¶¶ 175–76 (citing Nexplanon Prescribing Information (Ex. G) at 4) to ¶ 124 (citing Ex. G at 19). What Plaintiff does not do (because it cannot) is allege facts demonstrating that the drug and the alleged seed target the *same* tissue, as required by the

10

claims. Simply saying the "target tissue" limitation is met, while citing an exhibit that shows this limitation is not met, cannot make out a plausible claim for infringement. *See Atlas IP*, 189 F. Supp. 3d at 776 (Plaintiff "neglect[ed] the fact that its explanation of how the [accused products] allegedly practice [one set of elements] means that they almost certainly do not practice [another]").

Finally, the Complaint provides no allegations at all for the "brachytherapy" requirements in the "brachytherapy implantation instrument" and "brachytherapy implantation needle" limitations. All it says is that Nexplanon is "supplied with an implantation instrument which has at least one implantation needle" Complaint (D.I. 27) ¶ 166. But for the reasons explained above, Nexplanon is not brachytherapy. And the Complaint does not even attempt to address the "brachytherapy" requirement of these limitations, thus it does not present a plausible claim for infringement. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim.").

    **B.** **Plaintiff Has Failed to Plead a Plausible Claim for Direct Infringement Because the Complaint Lacks Facts To Support Plaintiff's Joint Infringement Theory.**

Count II implicates a joint infringement theory because Plaintiff accuses different actors of collectively performing the set of steps necessary to constitute direct infringement. Specifically, Plaintiff alleges that Merck provides the Nexplanon product and the instrument used to implant it (*i.e.*, the first two steps of claim 1) whereas "health care providers" are the ones that introduce the needle and actuate the instrument to deliver Nexplanon into the patient's tissue (*i.e.*, the last three steps of claim 1). While the Complaint alleges that both Merck *and* the health care providers directly infringe (D.I. 27 ¶ 188), that cannot be so because neither performs all of the claim steps. Thus, the only way to make out a plausible claim for direct infringement is

11

establish that Merck either "directs or controls" or "forms a joint enterprise" with these health care providers. *Akamai Techs.*, 797 F.3d at 1022.

The Complaint makes no express allegation of either direction or control or joint enterprise. Direction and control, as well as joint enterprise, requires that "the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Muniauction*, 532 F.3d at 1330. All Plaintiff alleges is that Merck provides instructions to health care providers, which will result in infringement if the provider chooses to follow them. D.I. ¶¶ 182–89. More importantly, those instructions say that Nexplanon "is indicated for use by women to prevent pregnancy" by implanting the device into the patients arm, D.I. 27, Ex. G at 2–4, not that it can or should be used as a seed for "brachytherapy" as is required by the '193 patent claims. Providing instruction to perform acts that Plaintiff says constitute certain steps of the claimed method, particularly those that even if performed would not meet the claimed requirements, is not enough to demonstrate "direction and control." *Muniauction*, 532 F.3d at 1330; *Medtronic*, 2009 WL 1163934, at *1; *Bonutti Skeletal Innovations*, 2015 WL 3755223, at *4. Indeed, courts have repeatedly rejected joint infringement theories, like Plaintiff's here, where the only facts alleged as to direction or control are that the Defendant provided instructions regarding the allegedly infringing use of a product. *See Medtronic,* 2009 WL 1163934, at *1 (providing training and instructions to physicians was not enough to raise triable issue of "direction and control" for direct infringement); *Bonutti*, 2015 WL 3755223, at *4 (granting motion to dismiss because providing instructions to physicians was not enough to plausibly plead the "direction or control" necessary to establish direct infringement). This Court should do the same.

Because there is no direct infringement, there is also no plausible claim that Merck has indirectly infringed by inducing health care providers to use Nexplanon. A claim for indirect infringement must be predicated on the existence of a direct infringement. *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 1227 (2014) ("[O]ur case law leaves no doubt that inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'"). Since Plaintiff here has failed to plausibly plead direct infringement of the '193 patent, it has likewise failed to plead a plausible claim for indirect infringement. *See, e.g., e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790, 2016 WL 4427209, at *5 (N.D. Cal. Aug. 22, 2016); *Tai v. Minka Lighting, Inc.*, No. CV-16-02810-PHX-DLR, 2017 WL 568519, at *3 (D. Az. Feb. 13, 2017) (holding that the plaintiff's indirect infringement "claim fails as a matter of law because Plaintiff has not stated a plausible claim for direct infringement").

## V.    CONCLUSION

Thus, all these reasons Merck respectfully requests that this Court dismiss Count II of the Complaint for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  November 3, 2017                                    Respectfully Submitted,

| **GIBSON, DUNN & CRUTCHER, LLP** | **McCARTER & ENGLISH, LLP** |
|---|---|
| *s/ Michael A. Valek* | *s/ John E. Flaherty* |
| Tracey B. Davies (admitted pro hac vice) | John E. Flaherty |
| tdavies@gibsondunn.com | jflaherty@mccarter.com |
| Michael A. Valek (admitted pro hac vice) | Guillermo C. Artiles |
| mvalek@gibsondunn.com | gartiles@mccarter.com |
| Betty X. Yang (admitted pro hac vice) | Ravin Patel |
| byang@gibsondunn.com | rpatel@mccarter.com |
| GIBSON, DUNN & CRUTCHER, LLP | McCARTER & ENGLISH, LLP |
| 2100 McKinney Avenue, Suite 1100 | Four Gateway Center |
| Dallas, TX 75201 | 100 Mulberry Street |
| Tel: (214) 698-3100 | Newark, New Jersey 07102 |
| Fax: (214) 571-2900 | Tel: (973) 622-4444 |
|  | Fax: (973) 624-7070 |

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 3, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                                                     */s/ John E. Flaherty*
                                                     John E. Flaherty